**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MICHELLE KARS and JON KARS,<br><br>*Plaintiffs,*<br><br>v.<br><br>EXPERIAN INFORMATION SOLUTIONS, INC.; EQUIFAX INFORMATION SERVICES LLC; TRANS UNION, LLC; VW CREDIT, INC. d/b/a AUDI FINANCIAL SERVICES; and VW CREDIT LEASING, LTD.,<br><br>*Defendants.* | Civil Action No.: 7:26-cv-5725<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

## PRELIMINARY STATEMENT

1. This is an action for actual, statutory, treble, and punitive damages, declaratory and injunctive relief, and statutory attorneys' fees and costs brought pursuant to the Fair Credit Reporting Act, 15 U.S.C. § 1681, et seq. ("FCRA"); the New York Motor Vehicle Retail Leasing Act, N.Y. Pers. Prop. Law § 330, et seq. ("MVRLA"); and New York General Business Law § 349 ("GBL § 349").

2. Plaintiffs Michelle Kars and Jon Kars (collectively, "Plaintiffs") leased a 2021 Audi Q5 that suffered a sudden loss of engine power caused by a defect so serious that the manufacturer recalled the vehicle under federal safety law. Mrs. Kars, who was nine months pregnant and had her young child in the back seat, was driving when the vehicle suddenly lost power and left the roadway.

3. The next day, Mrs. Kars promptly reported the defect to an authorized Audi dealership, which confirmed that the recalled gateway control module had failed and replaced it. The incident itself left only superficial scratches and minor cosmetic wear on the vehicle.

4. At the end of the lease, Plaintiffs were billed **$7,212.90** in "excess wear and tear" charges for damage arising from that recall-defect incident. When Mrs. Kars disputed the charges in writing (a dispute that was received and never answered), the account was charged off, placed for collection, and reported as a derogatory charge-off to all three national credit reporting agencies.

5. New York law flatly prohibits a lease holder from reporting an unsatisfied excess-wear claim to a credit reporting agency as a derogatory item before the consumer's statutory dispute rights run their course. N.Y. Pers. Prop. Law § 343(4)(c).

6. The Defendants consist of three national credit reporting agencies: Experian Information Solutions, Inc. ("Experian"), Equifax Information Services LLC ("Equifax"), and Trans Union, LLC ("Trans Union") (collectively, the "CRA Defendants"); the furnisher and servicer of the lease account, VW Credit, Inc. d/b/a Audi Financial Services ("VW Credit" or "AFS," the "Furnisher Defendant"); the holder of the lease, VW Credit Leasing, Ltd. ("VW Leasing," and together with VW Credit, the "VW Defendants").

7. Mrs. Kars disputed the inaccurate derogatory tradeline in writing with each of the CRA Defendants, which, in turn and upon information and belief, communicated the disputes to VW Credit.

8. VW Credit violated the FCRA by failing to conduct a reasonable investigation of the disputes, failing to review all relevant information provided by the consumer reporting agencies, and failing to promptly modify, delete, or permanently block information it could not verify as accurate, in violation of 15 U.S.C. § 1681s-2(b)(1).

9. The CRA Defendants violated the FCRA by failing to conduct reasonable reinvestigations of the disputes and delete or modify the disputed information, in violation of 15

U.S.C. § 1681i, and by failing to follow reasonable procedures to assure the maximum possible accuracy of the information they reported about Mrs. Kars, in violation of 15 U.S.C. § 1681e(b).

10. The VW Defendants violated the MVRLA and GBL § 349 by, inter alia, charging for excess wear and damage attributable to a recalled safety defect, failing to honor the statute's notice, appraisal, and dispute procedures, and reporting the unsatisfied claim derogatorily to the credit bureaus in violation of N.Y. Pers. Prop. Law § 343(4)(c).

11. As a direct and proximate result of Defendants' negligent and willful actions, conduct, and omissions, including publishing inaccurate derogatory information to third parties, Plaintiffs suffered cognizable actual damages (both economic and non-economic), including but not limited to denial of favorable credit terms, damage to reputation, emotional distress, anxiety, embarrassment, aggravation, and frustration.

## JURISDICTION AND VENUE

12. The Court has jurisdiction pursuant to 15 U.S.C. § 1681p and 28 U.S.C. § 1331.

13. Supplemental jurisdiction exists for the state law claims pursuant to 28 U.S.C. § 1367.

14. Jurisdiction over Plaintiffs' claims for declaratory relief is conferred by 28 U.S.C. § 2201.

15. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because Plaintiffs reside in this District, a substantial part of the events and occurrences underlying this litigation occurred within this District, and Defendants regularly conduct business here.

## PARTIES

16. Plaintiff Michelle Kars is a natural person residing in Rye Brook, Westchester County, New York.

17. Plaintiff Jon Kars is a natural person residing in Rye Brook, Westchester County, New York.

18. Each Plaintiff is a "consumer" as defined by 15 U.S.C. § 1681a(c), and a "lessee" as defined by N.Y. Pers. Prop. Law § 331(5).

19. Defendant Experian Information Solutions, Inc. ("Experian") is an Ohio corporation engaged in the business of assembling, evaluating, and dispersing information concerning consumers for the purpose of furnishing consumer reports. Experian is a "consumer reporting agency" within the meaning of the FCRA, 15 U.S.C. § 1681a(f).

20. Defendant Equifax Information Services LLC ("Equifax") is a Georgia limited liability company engaged in the business of assembling, evaluating, and dispersing information concerning consumers for the purpose of furnishing consumer reports. Equifax is a "consumer reporting agency" within the meaning of the FCRA, 15 U.S.C. § 1681a(f).

21. Defendant Trans Union, LLC ("Trans Union") is a Delaware limited liability company engaged in the business of assembling, evaluating, and dispersing information concerning consumers for the purpose of furnishing consumer reports. Trans Union is a "consumer reporting agency" within the meaning of the FCRA, 15 U.S.C. § 1681a(f).

22. Defendant VW Credit, Inc. d/b/a Audi Financial Services ("VW Credit" or "AFS") is a Delaware corporation with its principal place of business in Herndon, Virginia. VW Credit services consumer vehicle leases as servicer for VW Credit Leasing, Ltd., bills and collects lease-end charges, and reports credit information concerning consumer lease accounts to the major credit reporting agencies under the trade name "VW Credit."

23. VW Credit is a "furnisher of information" within the meaning of the FCRA, 15 U.S.C. § 1681s-2.

24. Defendant VW Credit Leasing, Ltd. ("VW Leasing") is a Delaware statutory trust and was at all relevant times the owner and holder of Plaintiffs' retail lease agreement, as reflected in

the New York Certificate of Title, which lists VW Credit Leasing, Ltd. as the vehicle's titled owner. VW Leasing is a “holder” within the meaning of N.Y. Pers. Prop. Law § 331(8).

25. VW Credit acted at all relevant times as VW Leasing's agent and servicer with respect to the conduct alleged herein, and each VW Defendant is responsible for the acts of the other with respect to the lease account.

## FACTUAL ALLEGATIONS

### A. The Lease and the Recalled Safety Defect

26. On or about August 21, 2021, Plaintiffs jointly entered into a 42-month closed-end consumer lease of a 2021 Audi Q5, VIN WA1AAAFY4M2108579, account number ending 1620 (the “Lease”), with an allowable mileage of 42,000 miles. The Lease was executed at Classic Automobiles Inc. in Eastchester, New York, and assigned to VW Leasing.

27. The Lease was held by VW Leasing and serviced by VW Credit d/b/a Audi Financial Services.

28. Plaintiffs leased the vehicle primarily for personal, family, and household purposes.

29. Plaintiffs made every scheduled payment on the Lease on time. Each CRA Defendant's own records reflect that the account was never late prior to the events described below: Trans Union's payment history reports the account “Current” for every month from September 2021 through February 2025, and Experian's tradeline states “Account charged off/Never late.”

30. On December 8, 2021, Volkswagen Group of America, Inc. filed Part 573 Safety Recall Report No. 21V-947 with the National Highway Traffic Safety Administration (“NHTSA”), designated by Audi as Recall Code 90S9, covering approximately 288,991 vehicles, including all 2021 Audi Q5 vehicles produced before November 12, 2021.

31. The recall addressed a defect in the vehicle's gateway control module: liquid ingress into the module causes internal short circuits, whereupon “the gateway switches off its function” and

"[t]he engine goes into emergency mode and remains in operation with reduced power." Audi warned that "[u]nexpected reduced engine power may create an increased risk of a crash in certain driving situations."

32. Plaintiffs' vehicle was within the recall population.

**B. The Defect Incident of March 13, 2022**

33. On March 13, 2022, while Mrs. Kars, then nine months pregnant and with her child in the back seat, was driving the vehicle, the vehicle suddenly lost engine power, the engine cut off and could not be restarted, and Mrs. Kars lost control of the vehicle, which veered off the road near King Street in the vicinity of Port Chester/Rye Brook, New York.

34. The vehicle was towed from King Street at the request of the police that same day; Plaintiffs paid a $125.00 towing charge in cash.

35. On March 14, 2022, the vehicle (then with only 10,438 miles) was brought to New Country Audi of Greenwich, an authorized Audi dealership, which (a) performed the 90S9 recall remedy, and (b) diagnosed the cause of the incident: "FOUND WATER ON J533 [the gateway control module] AND FUSE POPPED," whereupon the dealership "REPLACED FUSE AND INSTALLED NEW J533 AND PERFORMED REPLACEMENT CONTROL MODULE." The dealership recorded the cause as "ELECTRICAL MALFUNCTION OF GATEWAY."

36. In other words, Audi's own authorized dealership contemporaneously confirmed that Plaintiffs' vehicle suffered precisely the failure mode described in federal Safety Recall 21V-947, and that this failure caused the March 13, 2022 incident.

37. The incident caused cosmetic damage to the exterior of the vehicle, including scratches and related wear consistent with the vehicle's departure from the roadway.

38. Although the gateway control module was replaced under the recall free of charge, neither the dealership, VW Credit, VW Leasing, nor any other Audi-affiliated entity repaired or

paid for the cosmetic damage caused by the defect incident, and Plaintiffs' out-of-pocket expenses from the incident were never reimbursed.

39. Plaintiffs thereafter had the vehicle serviced at an authorized Audi dealership, and at no point during the Lease did any dealership or VW Defendant advise Plaintiffs of any needed tire replacement or excessive-wear related concerns.

**C. The Lease-End "Excess Wear" Charges**

40. Plaintiffs returned the vehicle on February 17, 2025, four days before the Lease's scheduled February 21, 2025 maturity date, with 35,115 miles (nearly 7,000 miles under the Lease's 42,000-mile allowance).

41. By Turn-In Settlement Invoice dated February 17, 2025, the VW Defendants billed Plaintiffs $7,212.90, consisting of $6,160.50 in claimed "Total Excess Wear & Tear" charges, a $495.00 disposition fee, and $557.40 in tax, with payment due March 20, 2025.

42. The itemized "Excess Wear & Use" charges (including a $2,956.66 headlight replacement and a dozen line items for "Mult Scratches/Heavy" and dents on the bumpers, hood, doors, quarter panels, and fender flares) consist of and/or include damage caused by the March 13, 2022 recall-defect incident and items constituting ordinary wear and tear.

43. Plaintiffs did not receive any pre-termination notice of excess wear and damage rights as required by N.Y. Pers. Prop. Law § 343(2).

44. To the contrary, when Plaintiffs returned the vehicle, they were told that because the lease was up, an inspection was no longer an option.

45. The VW Defendants did not send Plaintiffs, by registered mail or hand delivery within thirty days after retaking possession of the vehicle, a written itemized appraisal of excess wear and damage prepared by an appraiser licensed under N.Y. Veh. & Traf. Law § 398-d, as required by N.Y. Pers. Prop. Law § 343(3)(b). The only lease-end document Plaintiffs received was the

invoice itself, which arrived by ordinary mail; nothing identified as an appraisal, or as the work of a licensed appraiser, was ever sent to them.

46. In fact, the vehicle was not inspected until February 20, 2025, three days after Plaintiffs returned it, when AiM, a third-party inspection company retained by the VW Defendants, inspected the vehicle at a dealership without Plaintiffs present. The resulting "Vehicle Condition Report" itemizes the same $6,160.50 in claimed damage later billed to Plaintiffs and records the lessee as "Not Available." The report is not signed by the holder or its agent, does not contain the notice prescribed by N.Y. Pers. Prop. Law § 343(3)(b)(ii), does not identify its preparer as an appraiser licensed under N.Y. Veh. & Traf. Law § 398-d, and was never sent to Plaintiffs by registered mail or hand delivery as § 343(3)(b) requires.

**D. Mrs. Kars's Dispute to AFS, Received and Ignored**

47. By dispute letter dated March 5, 2025, sent via certified mail and email to AFS's Customer Disputes Department, Mrs. Kars formally disputed the lease-end charges, explaining that the claimed "wear and tear" charges were excessive, unreasonable, and unfounded; that the damage resulted from the March 2022 incident caused by the recalled gateway-control-module defect (NHTSA 21V-947 / Audi 90S9); that the vehicle had been serviced at an authorized Audi dealership without any wear or tire concerns ever being raised; and that Plaintiffs possessed time-stamped photographic evidence. The letter demanded that the charges be waived and a written response within 14 days.

48. The dispute letter was delivered to AFS in Libertyville, Illinois on March 18, 2025.

49. AFS, which has since admitted that it received Mrs. Kars's correspondence on March 5, 2025, never responded to the dispute, in writing or otherwise, never produced any appraisal or other validation of the charges, and never corrected its records.

50. On September 23, 2025, Mrs. Kars filed a complaint with the Consumer Financial Protection Bureau concerning the charges and AFS's failure to address her dispute, CFPB Complaint No. 250923-24355087. By letter dated October 9, 2025, AFS responded and refused to adjust the charges, stating that it was "unable to agree to your proposed resolution."

**E. The Unlawful Charge-Off, Derogatory Credit Reporting, and Collection**

51. Notwithstanding its receipt of Mrs. Kars's written dispute, on July 2, 2025 VW Credit charged off the account and began reporting it to each CRA Defendant as a charged-off account with a balance of $7,212 and past-due amount of $7,212.

52. At the time VW Credit first reported the charge-off, no arbitration had been commenced or concluded under N.Y. Pers. Prop. Law § 343(5), no judgment had been entered on the claimed excess-wear charges, and no settlement existed. Those are the statutory preconditions, one of which must occur before a lessor or holder may report an unsatisfied excess-wear claim to a credit reporting agency as a derogatory item. N.Y. Pers. Prop. Law § 343(4)(c).

53. On August 2, 2025, VW Credit placed the account for collection with Afni, Inc. ("Afni"), a debt collection agency.

54. Afni then dunned Mr. Kars for the full $7,212.90 by collection letter dated August 8, 2025, representing: "We are trying to collect a debt that you owe to AUDI FINANCIAL SERVICES."

**F. The Credit Harm Emerges**

55. In August 2025, Plaintiffs applied to lease a new vehicle and were informed that their credit tier had been lowered as a result of derogatory reporting, resulting in "Tier 6" lease approvals and materially higher payment terms.

56. On or about August 23, 2025, Mrs. Kars submitted online disputes of the charge-off with each of the three CRA Defendants.

57. As of October 1, 2025, Mrs. Kars's Experian FICO score stood at 643, rated "Fair," and the VW Credit charge-off was the only item on her Experian report flagged "Potentially Negative": her report showed zero collection accounts and no other derogatory tradelines.

### G. Disputes to the CRA Defendants

**Experian**

58. At the time Mrs. Kars disputed her credit report with Experian, her Experian credit report reported the VW Credit account as a charge-off with a balance of $7,212, a past-due amount of $7,212, and the internally contradictory status "Account charged off/Never late."

59. On or about September 22, 2025, Mrs. Kars disputed the VW Credit tradeline with Experian through Experian's online dispute portal, uploading her dispute letter dated September 22, 2025 together with a 37-page supporting packet containing: an index and statement; her March 5, 2025 certified dispute to AFS; the USPS certified-mail receipt and delivery confirmation; the NHTSA 21V-947 / 90S9 recall documentation; the Audi Greenwich repair records confirming the recall repair and the water-damaged gateway module; photographs and evidence linking the damage to the recall incident, including the police-requested towing receipt; and the Experian tradeline showing the charge-off.

60. Experian received Mrs. Kars's dispute and, upon information and belief, forwarded it to VW Credit.

61. Experian responded with dispute results generated October 14, 2025, reporting the VW Credit tradeline as "Updated": the account remained a charge-off with a balance of $7,212 and a past-due amount of $7,212, now bearing the statement "ITEM IN DISPUTE BY CONSUMER" and scheduled to remain on record until November 2031.

62. Experian's own post-reinvestigation report confirms the account's payment history: every scheduled payment made, a $0 balance following the final January 2025 payment, and no late payment ever, followed months later by a charge-off of the disputed lease-end charges.

63. Upon information and belief, Experian has continued to report the VW Credit charge-off tradeline on the credit reports of both Plaintiffs and to publish it to third parties.

64. The charge-off remains on all three Plaintiffs' credit reports to this day. Credit reports for Mrs. Kars generated June 22, 2026, and for Mr. Kars generated June 23, 2026, show each of Experian, Equifax, and Trans Union continuing to report the VW Credit account as a joint charge-off with a balance and past-due amount of $7,212, still reported as “past due as of May 2026.”

65. The bureaus' reporting of the account is also internally inconsistent: on the same joint account, Equifax reports the date the major delinquency was first reported as July 2, 2025 on Mr. Kars's file but as November 21, 2025 on Mrs. Kars's file.

**Equifax**

66. On or about September 22, 2025, Mrs. Kars disputed the VW Credit tradeline with Equifax through Equifax's online dispute process on the same grounds, identifying the recall defect and her delivered-but-ignored March 5, 2025 dispute to AFS, and submitting the same supporting documentation submitted to Experian, including the March 5, 2025 certified dispute to AFS, the USPS proof of delivery, the NHTSA 21V-947/90S9 recall documentation, the Audi Greenwich repair records, and photographs and evidence linking the damage to the recall incident.

67. Equifax received the dispute and responded with reinvestigation results dated October 10, 2025, Confirmation No. 5266607400.

68. Equifax's results parroted the furnisher's verification, stating: “THIS CREDITOR HAS VERIFIED TO OUR COMPANY THAT THE CURRENT STATUS IS BEING REPORTED CORRECTLY,” and “THIS CREDITOR HAS VERIFIED TO OUR COMPANY THAT THE BALANCE IS BEING REPORTED CORRECTLY,” while modifying various historical fields. Equifax continued to report the account as a charge-off for July, August, and September 2025 with a $7,212 balance.

**Trans Union**

69. On or about September 22, 2025, Mrs. Kars disputed the VW Credit tradeline with Trans Union through Trans Union's online dispute process on the same grounds, submitting the same supporting documentation.

70. Trans Union received the dispute and responded with investigation results dated October 10, 2025, File No. 000463239011, stating that it had “updated” the Date Updated, Last Payment Made, Date Closed, Rating, and Historical Trended Data fields, yet it left the Pay Status as “>Charged Off<” with a $7,212 balance and $7,212 past due.

71. Trans Union's post-reinvestigation tradeline was internally incoherent on its face: it reported lease terms of “$0 per month, paid Monthly for 42 months,” a “last payment” date that conflicts with the last-payment dates reported by Experian and Equifax for the same account, and a charge-off on an account whose own payment history showed “Current” status through February 2025.

**H. VW Credit's Sham Investigation**

72. Upon information and belief, each CRA Defendant that received Mrs. Kars's September 22, 2025 disputes communicated the dispute to VW Credit through the industry-standard ACDV process, as reflected in each of the CRA Defendants' reinvestigation results.

73. Upon receipt of the disputes, VW Credit verified the charge-off and the $7,212 balance as accurate to the CRA Defendants.

74. VW Credit verified the debt as accurate even though it possessed, in its own records: Mrs. Kars's delivered March 5, 2025 written dispute; the recall documentation for its own affiliate's vehicle; and, upon information and belief, access to its authorized dealer's March 14, 2022 repair order attributing the incident to the recalled defect. A reasonable investigation of the dispute would have required VW Credit to review these materials and to correct or delete the tradeline and cease treating the disputed, unvalidated, statutorily unreportable charges as a collectible charge-off.

75. On May 21, 2026, Plaintiffs each sent VW Credit, by certified mail to its designated dispute address, executed and notarized affidavits together with detailed written disputes, again demanding correction. The packet was delivered on May 27, 2026.

76. By letter dated June 24, 2026, VW Credit responded to Plaintiffs' renewed dispute and again refused to correct its reporting, stating that "the information was accurately reported." To date, VW Credit has not corrected the reporting or provided any validation of the $7,212.90 claimed.

**I. Damages**

77. As a direct and proximate result of Defendants' conduct, Plaintiffs have suffered actual damages including, without limitation: the lowering of their credit standing and credit scores attributable to the only derogatory item on Mrs. Kars's reports; the denial of favorable credit terms and relegation to inferior lease pricing tiers; the wrongful demand for, and collection activity upon, $7,212.90 that Plaintiffs do not owe; out-of-pocket losses associated with the defect incident underlying the disputed charges; and substantial emotional distress, anxiety, aggravation, embarrassment, and frustration, including the distress of being dunned by a

collection agency and credit-damaged in the midst of caring for a young family, notwithstanding years of timely payments and a dispute record that Defendants simply ignored.

78. Defendants' violations were willful, entitling Plaintiffs to awards of statutory and punitive damages.

**FIRST CAUSE OF ACTION**
**Fair Credit Reporting Act, 15 U.S.C. §§ 1681e(b) and 1681i**
**(Plaintiff Michelle Kars Against the CRA Defendants)**

79. Plaintiffs repeat and re-allege each of the foregoing paragraphs of this Complaint as if fully set forth herein.

80. The CRA Defendants each violated multiple sections of 15 U.S.C. § 1681i by their acts and omissions, including but not limited to:

a. failing to conduct a reasonable reinvestigation to determine whether the disputed information was inaccurate and to record the current status of the disputed information or delete the item from Mrs. Kars's credit file, in violation of § 1681i(a)(1);

b. failing to review and consider all relevant information submitted by Mrs. Kars, including the recall documentation, the authorized dealer's repair order, and the proof of her delivered-but-ignored dispute to the furnisher, in violation of § 1681i(a)(4);

c. failing to delete or modify the disputed inaccurate information from Mrs. Kars's credit file upon a lawful reinvestigation, in violation of § 1681i(a)(5); and

81. Each of the CRA Defendants further violated 15 U.S.C. § 1681e(b) by failing to establish and/or follow reasonable procedures to assure the maximum possible accuracy of the information concerning Mrs. Kars in the preparation of the credit reports and credit files it published and maintained, as evidenced by, inter alia, the reporting of a charge-off that was statutorily

prohibited from derogatory reporting under N.Y. Pers. Prop. Law § 343(4)(c), and tradeline data that was internally inconsistent across and within their own reports.

82. As a result of the CRA Defendants' violations of § 1681i and § 1681e(b), Mrs. Kars suffered actual damages, including but not limited to: loss of credit, denial of favorable credit terms, damage to reputation, embarrassment, humiliation, anguish, and the other damages set forth herein.

83. These violations were willful, rendering the CRA Defendants liable for actual damages, statutory damages, punitive damages, and costs and reasonable attorneys' fees pursuant to 15 U.S.C. § 1681n.

84. In the alternative, the CRA Defendants were negligent, entitling Mrs. Kars to recover actual damages and costs and reasonable attorneys' fees pursuant to 15 U.S.C. § 1681o.

**SECOND CAUSE OF ACTION**
**Fair Credit Reporting Act, 15 U.S.C. § 1681s-2(b)**
**(Plaintiff Michelle Kars Against Defendant VW Credit, Inc.)**

85. Plaintiffs repeat and re-allege each of the foregoing paragraphs of this Complaint as if fully set forth herein.

86. Congress enshrined within the FCRA the “need to ensure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy.” 15 U.S.C. § 1681(a)(4).

87. Congress stated plainly the purpose of the FCRA, namely “to require that consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information . . . .” 15 U.S.C. § 1681(b).

88. VW Credit violated § 1681s-2(b) by its acts and omissions, including but not limited to:

a. failing to conduct a reasonable investigation of Mrs. Kars's disputes after receiving notice of them from the CRA Defendants, in violation of § 1681s-2(b)(1)(A);

b. failing to review all relevant information provided by the consumer reporting agencies, in violation of § 1681s-2(b)(1)(B);

c. failing to report the results of any investigation accurately, and failing to report that the information was disputed and incomplete or inaccurate, in violation of § 1681s-2(b)(1)(C)–(D); and

d. failing to promptly modify, delete, or permanently block the reporting of information it could not verify as accurate, in violation of § 1681s-2(b)(1)(E).

89. As a result of VW Credit's violations of § 1681s-2(b)(1), Mrs. Kars suffered actual damages, including but not limited to loss of credit, denial of favorable credit terms, damage to reputation, embarrassment, humiliation, anguish, and the other damages set forth herein.

90. These violations were willful, rendering VW Credit liable for actual damages, statutory damages, punitive damages, and costs and reasonable attorneys' fees pursuant to 15 U.S.C. § 1681n.

91. In the alternative, VW Credit was negligent, entitling Mrs. Kars to recover actual damages and costs and reasonable attorneys' fees pursuant to 15 U.S.C. § 1681o.

**THIRD CAUSE OF ACTION**
**New York Motor Vehicle Retail Leasing Act, N.Y. Pers. Prop. Law §§ 343, 346**
**(Both Plaintiffs Against the VW Defendants)**

92. Plaintiffs repeat and re-allege each of the foregoing paragraphs of this Complaint as if fully set forth herein.

93. The Lease is a "retail lease agreement" within the meaning of N.Y. Pers. Prop. Law § 331, and the VW Defendants are, respectively, the holder and the servicing agent of the holder of the Lease.

94. The VW Defendants violated N.Y. Pers. Prop. Law § 343 by their acts and omissions, including but not limited to:

a. charging, attempting to receive, and seeking to collect a charge for excess wear and damage that exceeds both the actual cost of repairs paid by the holder and any true itemized estimate prepared by a licensed appraiser, in violation of § 343(1)(a);

b. upon information and belief, failing to mail or deliver the pre-termination notice of lessee rights required by § 343(2) in the required form and time;

c. failing to send Plaintiffs, by registered mail or hand delivery within thirty days of retaking possession of the vehicle, a conforming itemized appraisal as required by § 343(3)(b); and

d. reporting an unsatisfied claim for excess wear and damage to credit reporting agencies as a derogatory item before the expiration of the time for arbitration, entry of any final judgment, or execution of any settlement, in violation of § 343(4)(c).

95. Plaintiffs suffered losses as a result of these violations, including the damages set forth herein.

96. Pursuant to N.Y. Pers. Prop. Law § 346, Plaintiffs are entitled to recover their actual damages, a civil penalty of $100, and the costs of this action together with reasonable attorneys' fees.

**FOURTH CAUSE OF ACTION**
**New York General Business Law § 349**
**(Both Plaintiffs Against the VW Defendants)**

97. Plaintiffs repeat and re-allege each of the foregoing paragraphs of this Complaint as if fully set forth herein.

98. The VW Defendants' acts and practices alleged herein were consumer-oriented and have a broad impact on consumers at large. Upon information and belief, they were undertaken pursuant to standardized, uniform policies and practices that the VW Defendants apply to New York consumer lessees generally, including the use of form lease documents, form turn-in settlement invoices generated through a standardized inspection process, form collection notices, and automated furnishing of tradeline data to the credit reporting agencies.

99. None of the conduct alleged herein resulted from individualized negotiation with Plaintiffs or from any representation unique to Plaintiffs.

100. Upon information and belief, Plaintiffs' experience is representative of the VW Defendants' standard treatment of similarly situated consumer lessees, and the VW Defendants assess lease-end excess-wear charges, dun consumers for them, and furnish derogatory tradelines concerning them pursuant to these same standardized practices in numerous New York consumer transactions each year.

101. The VW Defendants engaged in materially deceptive and misleading acts and practices in the conduct of this consumer-oriented business, including: billing consumer lessees standardized “excess wear and tear” charges that sweep in damage caused by the manufacturer's own federally recalled safety defect; representing that such amounts are owed and collectible when the MVRLA's mandatory notice, appraisal, and dispute procedures have not been honored; dunning consumers and referring accounts to collection without investigating or responding to written

disputes; and reporting legally unreportable excess-wear claims to credit reporting agencies as derogatory charge-offs.

102. Plaintiffs were injured as a result, as set forth herein, including through the wrongful demand for $7,212.90, collection activity, damaged credit, and attendant economic and non-economic losses.

103. The VW Defendants' conduct was willful and knowing.

104. Pursuant to GBL § 349(h), Plaintiffs are entitled to injunctive relief, their actual damages or fifty dollars (whichever is greater), treble damages up to one thousand dollars, and reasonable attorneys' fees.

**FIFTH CAUSE OF ACTION**
**Declaratory Judgment, 28 U.S.C. § 2201**
**(Both Plaintiffs Against the VW Defendants)**

105. Plaintiffs repeat and re-allege each of the foregoing paragraphs of this Complaint as if fully set forth herein.

106. An actual and justiciable controversy exists between Plaintiffs and the VW Defendants concerning whether Plaintiffs owe the $7,212.90 in lease-end charges that the VW Defendants have billed, dunned, placed for collection, and reported to the credit bureaus.

107. Plaintiffs are entitled to a declaration that the claimed charges are not owed, and to injunctive relief requiring the VW Defendants to cease collection of the charges, to request deletion of the derogatory tradeline from each consumer reporting agency to which it was furnished, and to refrain from re-reporting it.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs seek judgment in their favor and damages against Defendants:

A. Awarding Plaintiffs actual damages, including damages for emotional distress;

B. Awarding Plaintiffs statutory damages;

C. Awarding Plaintiffs punitive damages;

D. Awarding Plaintiffs treble damages and civil penalties as provided by applicable state law;

E. Awarding Plaintiffs reasonable attorneys' fees and costs;

F. Declaring that Plaintiffs do not owe the claimed lease-end charges and granting declaratory and injunctive relief as appropriate, including an order directing the cessation of collection and derogatory reporting of the disputed charges;

G. Awarding pre-judgment and post-judgment interest as allowed by law; and

H. Granting such other and further relief as this Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Pursuant to Federal Rule of Civil Procedure 38, Plaintiffs hereby demand a trial by jury of all issues triable by jury.

Dated: July 6, 2026

Respectfully Submitted,

*/s/ Daniel A. Schlanger*
Daniel A. Schlanger
Schlanger Law Group, LLP
150 Allens Creek Road, Suite 240
Rochester, NY 14618
T: (212) 500-6114
F: (646) 612-7996
E: dschlanger@consumerprotection.net

Counsel for Plaintiffs